# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3131-15T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

W.H.G.,

    Defendant-Appellant.

_____

Submitted November 1, 2017 — Decided June 29, 2018

Before Judges Manahan and Suter.

On appeal from Superior Court of New Jersey,
Law Division, Union County, Indictment No. 06-
04-0337.

Joseph E. Krakora, Public Defender, attorney
for appellant (Monique D. Moyse, Designated
Counsel, on the brief).

Thomas K. Isenhour, Acting Prosecutor of Union
County, attorney for respondent (Stephen
William Bondi, Special Deputy Attorney
General/Acting Assistant Prosecutor, on the
brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant W.H.G. appeals the January 22, 2016 denial of his petition for post-conviction relief (PCR).  We affirm.

I

In 2011, defendant was convicted by a jury of two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b); and two counts of endangering the welfare of a child, N.J.S.A. 2C:24-4(a).  At sentencing, the second-degree sexual assault counts were merged with the first-degree aggravated sexual assault counts.  On the aggravated sexual assault counts, defendant was sentenced to two eighteen-year terms of imprisonment, to be served consecutively, with an eighty-five percent period of parole ineligibility and five years of parole supervision, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.  On the endangering counts, defendant was sentenced to two ten-year terms to be served concurrently.

We affirmed the conviction and sentence in an unpublished opinion, but remanded for the determination of penalties under the Sex Crime Violent Treatment Fund, N.J.S.A. 2C:14-10.  State v. W.H.G., No. A-4238-11 (App. Div. Oct. 10, 2014) (slip op. at 27), certif. denied, 221 N.J. 285 (2015).

We derived the salient facts from our previous opinion.

A-3131-15T3

Defendant's wife (Greta)[1] had two children from a previous relationship. Lori was seven and her sister, Mary, was five when Lori told a classmate at school, K.V., that defendant, her stepfather, had sexually molested her. K.V. told her mother, who then told the principal of the school, who notified the Division of Youth and Family Services (Division) and the local police.

"Both girls initially denied that they were being sexually molested by defendant or anyone else. Despite these verbal assurances, [the Division worker] note[d] that the children seemed guarded . . . [and] recommended in her report that the girls be re-interviewed at a future date 'out of the home and outside the presence of the stepfather.'" <u>W.H.G.</u>, slip op. at 5-6. When the girls were interviewed, "Lori told her that defendant sexually abused her and her sister when they were at home alone with him when their mother was at work." <u>Id.</u> at 6. Then Mary also "described in graphic details of sexual activity that is ordinarily beyond the scope of knowledge associated with an eight-year-old girl." <u>Id.</u> at 7. At the prosecutor's office on December 1, 2015, Lori at first denied any sexual activity, but when confronted with

---

[1] We use the same fictitious names here for defendant's wife and her two children that we used in our 2014 opinion to maintain their privacy. <u>See</u> <u>State v. W.H.G.</u>, No. A-4238-11 (App. Div. Oct 10, 2014).

a statement her sister had made, "finally admitted the full scope of the molestation in graphically disturbing details." Id. at 10. Mary's description was "far more graphic and direct." Ibid. As we said in our 2014 opinion, "[t]his child of tender years provided the detective who interviewed her devastatingly disturbing details of the sexual assault committed against her by defendant." Ibid.

"On December 15, 2005, both girls recanted their statements they had given to law enforcement authorities two weeks earlier accusing defendant of having sexual relations with them." Id. at 14. Defendant went missing after December 1, 2005, until he was apprehended in Arizona in November 2009.

At defendant's jury trial in 2011, the State called fourteen witnesses, "including Lori and Mary, who were then sixteen and fourteen years old respectively, their mother, Greta, a number of law enforcement officers, [Division] caseworkers, other lay persons with relevant knowledge of the event and two expert witnesses in the field of child sexual abuse." Ibid. The girls "reaffirmed at trial the recantations" they had given earlier. Ibid. Lori was confronted with a journal she had kept at school "in which she described the details of what defendant had allegedly done to her when she was ten years old." Ibid. The State's psychological expert, testified about her examinations of the

girls. Another State psychological expert, testified about child sexual abuse accommodation syndrome (CSAAS), but on cross-examination, defense counsel established that psychologists do not "consider CSAAS as being determinative of whether abuse occurred." Id. at 20. Defendant did not call any witnesses on his behalf. Defendant was convicted as we have described.

Defendant filed a pro se petition for post judgment relief in 2015 that was supplemented by his appointed counsel. Defendant contended he was denied the effective assistance of counsel at his trial and by counsel who handled his appeal. He alleged that he was entitled to an evidentiary hearing because his trial counsel failed to conduct an investigation prior to trial or to call favorable witnesses. Defendant claimed he did not receive discovery nor discuss trial strategy with his attorneys. His attorneys did not conduct an effective cross-examination of the State's witnesses at trial or call favorable witnesses. He claimed they did not file any pre-trial motions. Defendant contended that exculpatory evidence was not presented and that his wife was misled by the police regarding the search of their home. He claimed his attorneys lacked an interest in his case and "there was an additional lack of serious understanding of the English language

by the defendant." Defendant asserted that his appellate counsel failed to raise any of these claims.

Defendant's PCR petition was denied in January 2016. In rejecting his claims that counsel failed to investigate the case, the court noted that defendant "has not submitted any certifications or affidavits from other expert witnesses and has not made any proffer with respect to the testimony." He did not name "one favorable witness that trial counsel could have called, what said witness would have testified to, nor how the testimony would have altered the outcome of the trial."

The court rejected defendant's claims about lack of discovery finding that he did not "detail[] which items he did not receive and how receipt of the undisclosed items would have altered the outcome of the trial." Without this, the court could not determine how this would have affected the case. A pretrial memorandum had stated that all pretrial discovery was completed.

As for defendant's claims about certain videotaped evidence, the court found that they were made available to him "during . . . [the] trial and the pretrial hearing." Relating to defendant's claim that his attorneys should have filed suppression motions, defendant did not point out what evidence supported his claim. The court rejected defendant's claim that counsel failed to present

exculpatory evidence because defendant did not describe what evidence he was referencing. The court found that his trial counsel's performance was not "objectively deficient" because he did not "offer[] any specific evidence of deficiency." Also, defendant did not show how he was prejudiced because "no evidence [was] presented to this [c]ourt that the outcome would have changed by counsel doing anything that [p]etitioner alleges that counsel failed to do." The court rejected defendant's claims about his appellate counsel for the same reasons.

In his appeal from the denial of his PCR petition, defendant raises the following issues:

> [W.H.G.] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT HIS ATTORNEYS RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL.

In his pro se brief, defendant also alleges that:

> Legal Argument I
>
> Appellant's Trial Counsel Rendered Ineffective/Remedial Ineffective Assistance Of Counsel For Gravely Failing To Investigate And Gravely Failing To Adequately Consulting [sic] With Appellant.
>
> Legal Argument II
>
> It Was Prejudicial Error To Deny Appellant His Post-Conviction Relief Of An Evidentiary Hearing, Pursuant to R. 3:22-10.
>
> Legal Argument III

The Prosecutorial Misconduct Deprived Appellant's [sic] A Fair Jury Trial With The Bolstering Of The Credibility For The State's Witnesses.

Legal Argument IV

Appellant Submit That The Lower Court Dismissed The Fundamental Value Of A Witness/Witnesses Recantation From Initial Complaint/Statements And This Deprived A Fair Jury Trial.

We find no merit in any of these arguments.

## II

The standard for determining whether counsel's performance was ineffective for purposes of the Sixth Amendment was formulated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and adopted by our Supreme Court in <u>State v. Fritz</u>, 105 N.J. 42 (1987). In order to prevail on an ineffective assistance of counsel claim, defendant must meet a two-prong test by establishing that: (1) counsel's performance was deficient and he or she made errors that were so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and (2) the defect in performance prejudiced defendant's rights to a fair trial such that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.

"[W]hen a petitioner claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." State v. Porter, 216 N.J. 343, 353 (2013) (alteration in original) (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)).

Here, although he claimed his attorneys failed to investigate the case, find favorable witnesses, or present exculpatory information, we agree with the PCR judge that these claims lacked any specific information. Without that information, the court could not determine what should have been investigated or how it would have changed the outcome of the trial.

Defendant does not say what discovery he did not receive. He does not say what pre-trial motions should have been filed that were not. His allegations are supported only by self-serving assertions and bare allegations. See Cummings, 321 N.J. Super. at 170 ("[A] petitioner must do more than make bald assertions that he was denied the effective assistance of counsel.").

He claims his attorneys did not consult with him but, he is not specific about what was not discussed, when this occurred, or how this would have made a difference. In fact, the transcript

from May 2011, indicates defendant's counsel spoke with him about whether he still wanted to go to trial "and his position remain[ed] the same, that he still wishe[d] to go to trial, [and did] not want to entertain any sort of plea negotiations." Defendant was "maintaining his innocence and that he wishe[d] to proceed to trial."

Defendant contends he should have had an interpreter but there was no indication that his counsel had difficulty speaking with him as early as May 2011. He has submitted pro se pleadings to the court without any showing that they were translated.

Defendant contends in his pro se brief that his trial counsel should have moved for a mistrial because the State bolstered its witnesses at trial. He cites to two passages from the State's summation to support his claim. However, we addressed the nature of the prosecutor's summation in the direct appeal where defendant "claim[ed] certain parts of the prosecutor's summation were highly improper and deprived him of his constitutional right to a fair trial." W.G.H., slip op. at 2-3. Although we applied the plain error standard in rejecting his claims, we also said that "we are thoroughly convinced that defendant's argument lacks sufficient merit to warrant further discussion in a written opinion." Id. at 25 (citing to Rule 2:11-3(e)(2)). Defendant now alleges

prosecutorial misconduct but failed to provide any factual allegations or point to any areas of the trial transcript where this misconduct occurred.

His claim on appeal that the "lower court dismissed the fundamental value of a witness/witnesses recantations," depriving him of a fair trial, lacks merit because he was convicted by a jury, not the judge.

We agree with the PCR judge that defendant failed to show how any of the issues he raised in his petition would have changed the outcome of the trial and thus, he failed to meet the prejudice prong of Stickland.

Defendant contends his appeals counsel should have raised all the arguments he raises here, but because they lack merit, there was no error by counsel in not raising them.

We are satisfied from our review of the record that defendant failed to make a prima facie showing of ineffectiveness of trial counsel within the Strickland/Fritz test. Accordingly, the PCR court correctly concluded that an evidentiary hearing was not warranted. See State v. Preciose, 129 N.J. 451, 462-63 (1992).

Any other appellate arguments raised by defendant are without sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-3131-15T3